NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| Edward Mattus, et. al, | : | |
| | : | |
| Plaintiffs, | : | Civ. No. 05-0863 (DRD) |
| | : | |
| v. | : | |
| | : | |
| Facility Solutions, Inc., et. al | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |
| | : | |

---

David Zatuchni, Esq.
ZATUCHNI & ASSOCIATES, LLC
2 Research Way, First Floor
Princeton, New Jersey 08540

*Attorney for Plaintiffs*

Robert H. Bernstein, Esq.
Stephen D. Bird Esq.
REED SMITH, LLP
1 Riverfront Plaza, First Floor
Newark, New Jersey 07102-5400

*Attorneys for Defendant Wal-Mart Stores, Inc.*

**DEBEVOISE, Senior District Judge**

### I. PROCEDURAL HISTORY

Plaintiffs, Edward Mattus, Jeremy Rivera, Richard Tavarez, Anibal Tavarez and Rene

Leon, filed a complaint in Superior Court against their former employer, Facility Solutions, Inc.

1

("FSI"), and a company with which FSI contracted to supply janitorial workers, Wal-Mart Stores, Inc. ("Wal-Mart").  Wal-Mart removed the action to this Court on February 14, 2005.  Plaintiffs' pending complaint, the Amended Complaint, raises eight distinct counts against FSI, three of which are also alleged against Wal-Mart.  Those three counts are civil conspiracy, tortious interference with business relationships, and violations of the New Jersey Law Against Discrimination ("NJLAD").

Wal-Mart moves to dismiss each of the claims against it in the Amended Complaint. Plaintiffs move for leave to file a Second Amended Complaint.  In the proposed Second Amended Complaint, Plaintiffs abandon the civil conspiracy claim but add six other counts against Wal-Mart.  Those counts are: (1) violation of the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. §1962(c) (the "RICO Enterprise claim"); (2) violation of RICO,18 U.S.C. §1962(d) (the "RICO Conspiracy claim"); (3) violation of New Jersey's Racketeering statute, N.J.S.A. 2C:41-2; (4) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 255(a); (5) promissory estoppel; and (6) fraud.  Plaintiffs also reassert/modify their claims for tortious interference and violations of the NJLAD as counts seven and eight respectively in the Second Amended Complaint. Each of Plaintiffs' eight claims will be evaluated in turn.

## II.  BACKGROUND

Plaintiffs claim that in October of 2003, FSI lured them away from their prior employment with promises of long-term positions and a weekly salary of at least $550 per week, plus overtime.  FSI, which provided cleaning services to Wal-Mart, allegedly hired Plaintiffs to

work as floor cleaners in several Wal-Mart stores.  Once Plaintiffs accepted those positions, FSI allegedly rescinded its promise of a $550 weekly wage and told Plaintiffs they would receive a lower hourly rate.  Additionally, FSI allegedly refused to pay Plaintiffs for more than seven hours of work per day even though they were required to work overtime.  Plaintiffs further claim that shortly after they started work they were made to train newly hired undocumented aliens and that on November 5, 2005 each Plaintiff was terminated and replaced with an undocumented alien.

According to Plaintiffs, the above incidents were part of a scheme in which Wal-Mart and FSI conspired to hire them in response to a federal crackdown on Wal-Mart's use of illegal aliens.  As part of that scheme, Defendants allegedly conspired to "disguis[e] [Wal-Mart's] use of illegal immigrant labor by quickly and temporarily hiring legal workers until it was deemed safe to hire cheap, illegal labor again."  (Am. Compl. ¶ 10.)

### III.  DISCUSSION

**Standard for Leave to Amend under Fed. R. Civ. P. 15(a)**

Under Rule 15(a), a party should be granted leave to amend its pleading when justice so requires.  The Third Circuit has consistently held that "leave to amend should be granted freely . . . and court[s] should use 'strong liberality' in considering whether to grant leave to amend." Dole v. Arco Chemical Co., 921 F.2d 484, 486-487 (3d Cir. 1990)(citations omitted).  Such an approach ensures that a claim will be decided on the merits rather than on technicalities.  Id. However, such liberality is not limitless.  Several factors weigh against granting leave to amend. Those factors include, undue delay, bad faith, undue prejudice and futility of amendment.

Wal-Mart contends that Plaintiffs have engaged in undue delay and bad faith.  Wal-Mart

3

cites the fact that Plaintiffs have already amended their complaint on one occasion and that no new facts have come to light which would require a second amendment.  Thus Plaintiffs could have made all appropriate changes to their pleadings the last time they amended the complaint.

Although that fact weighs against granting Plaintiffs' motion, it is not dispositive.  In fact, "prejudice to the non-moving party is the touchstone for the denial of an amendment."  <u>Cornell & Co. v. Occupational Safety & Health Review Com.</u>, 573 F.2d 820, 823 (3d Cir. 1978).  In the present case there is no evidence that Wal-Mart would be prejudiced if Plaintiffs are granted leave to amend.  Indeed, Wal-Mart does not even argue this point.  In the interest of justice Plaintiff should be granted leave to amend so long as the proposed claims are not futile.

Futility of amendment is defined as the inability to survive a motion to dismiss.  <u>Oran v. Stafford</u>, 226 F. 3d 275, 291 (3d Cir. 2000).  Thus evaluating futility involves application of the same standard of legal sufficiency that applies under Rule 12(b)(6).  The court will deem Plaintiffs' complaint to have been amended and subject to Wal-Mart's motion to dismiss.

**Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)**

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73.  Allegations contained in the Complaint will be accepted as true, <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations."  <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1405 (3d Cir. 1991).  However, the plaintiff is required to make factual allegations and cannot rely on conclusory recitations of law.  <u>Pennsylvania ex rel.</u>

Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

**RICO**

Counts I, II and III of Plaintiffs' proposed Second Amended Complaint are as follows: (1) violation of RICO, 18 U.S.C. §1962(c); (2) violation of RICO, 18 U.S.C. §1962(d); (3) violation of NJRICO, N.J.S.A. 2C:41-2.  As Wal-Mart withdrew its opposition to Plaintiffs' motion as it relates to these three counts, Wal-Mart's motion to dismiss Counts I, II, and III will be denied.

**Violation of the Fair Labor Standards Act**

In Count IV of their proposed Second Amended Complaint, Plaintiffs allege that Wal-Mart violated the Fair Labor Standards Act by failing to pay them overtime.  Under the FLSA employers are required to pay an employee one and one-half times the employee's normal rate of pay for all hours worked in excess of forty hours per week, 29 U.S.C. 207.  To demonstrate a cause of action under the FLSA, a plaintiff must prove not only that the defendant failed to pay overtime, but also prove that the defendant is in fact plaintiff's employer.  Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. 203(d).  To determine whether a defendant is an employer, courts examine the following factors:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business . . . .  [Regarding these factors] courts should examine the circumstances of the whole activity, and should consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service.

Cahill v. City of N.B., 99 F. Supp. 2d 464, 471 (D.N.J. 2000).

    In their Second Amended Complaint, Plaintiffs state the following:

> Wal-Mart exercised meaningful control over the work performed by the Plaintiffs, the hiring and firing of these Plaintiffs; the amount paid to them as wages; their hours and working conditions; and the tasks they performed, including quality and quantity standards, speed, scheduling and sequence. Wal-Mart required the Plaintiffs to perform work that is an integral part of Wal-Mart's business. Further, Wal-Mart controlled the hours and working conditions of the workers and, together with FSI, shared the power to set the wages, determine their working conditions, and jointly reap the benefits from the Plaintiffs.

(Pl.'s Second Am. Compl. ¶ 27.)

    The above allegations suggest that factors one, five and six, as well as the final consideration (economic reality) might weigh in Plaintiffs' favor. As such, Plaintiffs may be able to prove that Wal-Mart was their employer within the meaning of the FLSA. Wal-Mart argues that Plaintiffs' claims are not factual allegations but mere conclusory recitations of law. But in claiming that Wal-Mart controlled hiring decisions and determined wages, hours, and routine job responsibilities, Plaintiffs have alleged factual allegations sufficient to survive a motion to dismiss. Wal-Mart's motion to dismiss Count IV will be denied.

**Promissory Estoppel**

    Count V of Plaintiffs' Second Amended Complaint advances a claim based upon the doctrine of promissory estoppel. To recover on a theory of promissory estoppel, a "plaintiff must prove that (1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) incurred a detriment in said reliance." Swider v. Ha-Lo Indus., 134 F. Supp. 2d 607, 619 (D.N.J. 2001). Unless accompanied by a written contract, a promise of employment is

presumed to be a promise of at-will employment.  See id.  Thus, reliance on such a promise does not typically give rise to a cause of action for promissory estoppel.  Id. at 620.

In Swider, the court notes that there is an exception to that general rule when the plaintiff suffers some external, additional cost.  Id.  For example, if a plaintiff relies on a promise of employment to the extent that she terminates a lease and relocates, the plaintiff may have a cause of action for promissory estoppel.  Id.

In the present case Plaintiffs do not allege certain essential elements of a promissory estoppel claim, i.e., that they had an employment contract with Wal-Mart, or that they incurred any external, additional costs.  Therefore, Wal-Mart's motion to dismiss Count V will be granted.

**Common Law Fraud**

Count VI of Plaintiffs' Second Amended Complaint advances a claim of common law fraud.  To state such a claim, a plaintiff must allege the following: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (N.J. 1997).  Furthermore, Fed. R. Civ. P. 9(b) requires the above elements to be pled with particularity.

Courts have found that misrepresentations in employment offers can constitute the basis for fraud claims.  See e.g., Shebar v. Sanyo Business Systems Corp., 218 N.J. Super. 111 (App. Div. 1987)(*affirmed by* Shebar v. Sanyo Business Systems Corp., 111 N.J. 276 (1988).  In that case, the court reversed the trial court's order dismissing plaintiff's claim of fraud where he was terminated shortly after the defendant employer told him he "had a job for the rest of [his] life"

7

so long as he did not accept an employment offer from defendant's competitor. Id. at 116. As the court stated, defendant "induced [plaintiff] to stay and to forego the [other] opportunity with the then intention of replacing him in the near future." Id. at 117.

The alleged circumstances of the present case are very similar to the facts in Shebar. In the present case, Plaintiffs allege that Defendants induced them to leave their prior employment with false promises of permanent positions, false in the sense that Defendants had no intention of honoring those promises. According to Plaintiffs, a representative, manager or agent from either Wal-Mart or FSI offered them permanent, long-term employment at a fixed weekly salary, plus time-and-a-half for overtime. Plaintiffs allegedly relied on those offers when they left their prior employment to accept Defendants' offers. Plaintiffs further allege that Defendants never intended to pay them the promised wage nor to keep them on as permanent employees. Under the standard stated above, and the holding stated in Shebar, Plaintiffs' allegations successfully plead a claim of common law fraud.

Wal-Mart argues that Plaintiffs' claim fails to satisfy the first element in the above standard because the alleged misrepresentation involves future events (e.g., the amount Plaintiffs *would* be paid and the terms and conditions under which they *would* work if they accepted employment) rather than a presently existing or past fact. Defendants cite two cases to support that argument.

First, Defendants cite Swider v. Ha-lo Industries, Inc., 134 F. Supp 2d 607 (D.N.J. 2001). In that case the court states that the plaintiff cannot "base a claim of fraud on a statement regarding a future event, such as whether plaintiff would have to make sales if he accepted employment as Sales Manager with defendant." Id. at 629 n. 4. Wal-Mart contends that the

court's statement means that any promise regarding employment conditions is a future event. But the above statement is mere dicta, contained in a footnote, and is not explained by the court. Although it is unclear, it appears that the plaintiff already had an employment contract with a company being acquired by the defendant and that the above statement was made regarding the future terms of employment under which the plaintiff would work once his present contract expired. Such circumstances are very different from a present offer of employment. Furthermore, the court in Swider evaluates other misrepresentations the defendant allegedly made regarding the same employment offer (e.g., statements about plaintiff's title and job description). From that discussion, it is clear the court thought those misrepresentations *could* support a claim of fraud, though the court ultimately found them to be immaterial. Id. at 630.

Second, Wal-Mart cites Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378 (D.N.J. 1999). In that case, the court stated that a plaintiff "cannot base a claim of fraud on an employment manual's representations of future advancement." Id. at 385. But again, that statement is mere dicta that is not thoroughly explained and it is clear that the alleged misrepresentation concerned *future* advancement, not present employment conditions. Id. Furthermore, the court ultimately based its decision on other grounds (dismissing plaintiff's claim for lack of particularity). Id. Therefore, Swider and Mardini do not stand for the proposition that employment offers are future events that cannot constitute the basis of a claim of fraud.

Wal-Mart further argues that Plaintiffs cannot satisfy the fourth element, reasonable reliance, because the employment offers were for at-will employment. But such an argument is contrary to the holding in Shebar, which, as discussed above, found that plaintiff reasonably

9

relied on defendant's offer where defendant verbally promised lifetime employment. In upholding that decision, the New Jersey Supreme Court further stated that a reasonable factfinder could conclude that defendant's offer "transformed plaintiff's at-will employment to employment with termination for cause only." Shebar, 111 N.J. at 289.

Likewise, in the present case, Plaintiffs allege that Defendant promised "permanent employment." Based on the rulings in the two Shebar opinions, such a statement may be sufficient to establish reasonable reliance.

Finally, Wal-Mart argues that Plaintiffs failed to plead this claim with particularity, as required by Fed. R. Civ. P. 9(b). Plaintiffs' complaint states that a representative, manager or agent from either Wal-Mart or FSI offered them permanent, long-term employment. Wal-Mart argues that such a claim fails to satisfy Rule 9(b) because "[P]laintiffs are unable to plead whether a Wal-Mart 'representative, manager or agent' actually made the purported misrepresentations . . . ." (Def. Br. 41.) But the phrase "representative, manager or agent" is merely a redundancy that was used because Plaintiffs do not yet know the speaker's exact capacity. As Wal-Mart fails to make any further argument as to why Plaintiffs' pleading is insufficient in this regard, Plaintiffs' claim of fraud is deemed to satisfy the particularity requirement of Rule 9(b). For the reasons stated above, Wal-Mart's motion to dismiss Count VI will be denied.

**Tortious Interference with Business Relationships**

Plaintiffs allege in Count VII of their Second Amended Complaint that Wal-Mart interfered with their relationship with FSI by coercing FSI to terminate their employment in favor of hiring lower-paid undocumented aliens. (Am. Compl. ¶ 47.) To support a claim for tortious

interference with a business relationship, a plaintiff must demonstrate: "(1) a protected interest, not necessarily amounting to an enforceable contract; (2) defendant's intentional interference without justification; (3) a reasonable likelihood that the benefit plaintiff anticipated from the protected interest would have continued but for the interference; and (4) resulting damage," Jenkins v. Region Nine Hous. Corp., 306 N.J. Super. 258, 265 (N.J. Super. Ct. 1997).

It is well established that the existence of an employment relationship is sufficient to establish a protected interest, even where there is no contract between employer and employee, See id. In this case, Plaintiffs satisfy the first element of their claim because they had an employment relationship with FSI.

As for the second element, Wal-Mart argues that the alleged conduct is justifiable because it was motivated by a legitimate business interest, i.e., cost savings. While lowering one's operating costs is a legitimate business interest, doing so through illegal means is not. As Plaintiffs point out, financially motivated conduct may nonetheless be unjustifiable if it violates generally accepted standards of morality, Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173, 189 (N.J. Super. Ct. 1978). As stated in Sustick v. Slatina, 48 N.J. Super. 134, 144 (N.J. Super. Ct. 1957), "the ultimate inquiry is whether the conduct was 'both injurious and transgressive of generally accepted standards of common morality or of law,' [and whether it was] 'sanctioned by the 'rules of the game.'" (citations omitted). Under this standard, the alleged conduct (coercing an employer to fire its employees and replace them with illegal aliens, who will be paid below minimum wage) cannot be justified because it is not only immoral but illegal. Such conduct cannot be considered to be within the rules of the game. Thus, Plaintiffs have satisfied their burden for this element.

To satisfy their burden under the third element, Plaintiffs must allege facts which demonstrate a reasonable likelihood that their employment relationship with FSI would have continued if Wal-Mart had not interfered.  Plaintiffs allege that Wal-Mart coerced FSI into replacing them with undocumented aliens.  But Plaintiffs also allege that Wal-Mart and FSI had a history of using undocumented aliens and that they only hired Plaintiffs in response to a government crackdown on their use of such workers.  (Second Am. Compl. ¶¶ 17-19.)  Plaintiffs further allege that Wal-Mart and FSI conspired to misrepresent the terms of their employment offer in order to lure Plaintiffs away from their former jobs.  Under this scheme, Wal-Mart and FSI planned to hire Plaintiffs for a brief period and then replace them with undocumented aliens.  (Second Am. Compl. ¶ 19.)  As Plaintiffs state, "FSI and Wal-Mart, at all times, knew that [their] representations [to Plaintiffs] were false and that the Plaintiffs would each be terminated shortly and replaced with unlawful alien labor."  (Second Am. Compl. ¶19.)  Thus, according to Plaintiffs' own allegations, FSI never intended to maintain its employment relationship with Plaintiffs, and therefore, there was never a reasonable likelihood that their employment would have continued if Wal-Mart had not interfered.  Plaintiffs fail to meet their burden under this element.

Regarding the fourth element, Plaintiffs no doubt suffered damage when their employment was terminated.  But as discussed above, such damage cannot be linked to Wal-Mart's alleged interference, because FSI never had any intention of maintaining an employment relationship with Plaintiffs.  For the above stated reasons, Wal-Mart's motion to dismiss Count VII will be granted.  Plaintiffs' allegations supporting its tortious interference claim may well be highly relevant to their Count VI fraud claim.

**New Jersey Law Against Discrimination**

In Count VIII, Plaintiffs allege that Wal-Mart unlawfully discriminated against them in violation of the New Jersey Law Against Discrimination.  The NJLAD states in pertinent part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
> For an employer, because of the race, creed, color, *national origin*, ancestry, . . . or the *nationality* of any individual, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

N.J. STAT. ANN. § 10:5-12(a) (emphases added).  Plaintiffs allege that Wal-Mart discriminated against them by replacing them with undocumented aliens.  They contend that such conduct constitutes national origin discrimination.  Although they do not use the term "nationality," Plaintiffs base their claim on the fact that they are all American born nationals.  In light of these allegations, it is necessary to determine whether Plaintiffs' claim amounts to discrimination based on either national origin or nationality.

Generally, a claim under the NJLAD is analyzed under Title VII standards.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).  To succeed, a plaintiff must initially establish a prima facie case of unlawful discrimination, Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989).  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate some legitimate, non-discriminatory reason for the adverse employment action, Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 (3d Cir. 1996).  Thereafter, the burden shifts back to the plaintiff "to produce some evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination,"  Bray v.

13

Marriott Hotels, 110 F.3d 986, 990(3d Cir. 1997).  A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them 'unworthy of credence,'"  Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

To establish a prima facie case of discrimination a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position in question, and (3) nonmembers of the protected class were treated more favorably,  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).  In this case, the adequacy of the Complaint with respect to the last two elements has not been questioned.  Therefore the court will examine whether the first element has been adequately pled.

The critical issue is whether "Americans" are a protected class under the NJLAD.  Under Title VII, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973).  The prohibition of discrimination based on "national origin" does not prohibit discrimination on the ground of citizenship.  Id. at 89 ("Congress did not intend the term 'national origin' to embrace citizenship requirements.").  For example, in Novak v. World Bank, No. 79-0641, 1979 U.S. Dist. LEXIS 11742 (D.D.C. June 13, 1979), the plaintiff argued that the defendant had a policy of discriminating against United States citizens in violation of Title VII's prohibition against national origin discrimination.  The court held that such a claim – *i.e.*, discrimination against U.S. citizens – alleges discrimination based only on citizenship and thus was barred by the holding in Espinoza.  Id. at *3.  Therefore, an employer may discriminate within the bounds of Title VII on the basis of citizenship but not on the basis of national origin.

Vicedomini v. Alitalia Airlines, No. 82 Civ. 2431 (CBM), 1983 U.S. Dist. LEXIS 11550, at *9-10 (S.D.N.Y. Nov. 18, 1983)  Here, Plaintiffs' national origin discrimination claim, as distinguished from a "nationality" claim, must be dismissed because being "American" does not fall within the definition of "national origin," which is determined by looking only at ancestry. Id. at *11-12 (finding that "the national origin of a person born in the United States is determined by looking only to his ancestry").

With respect to Plaintiffs' discrimination claim based on "nationality," a different result is called for.  LAD does not provide a definition nor offer an explanation to distinguish "nationality" from "national origin."  Indeed, several cases which discuss Title VII claims use "national origin" and "nationality" interchangeably.  See, e.g., Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003) (using "nationality" and "national origin" interchangeably when noting that "because racial categories may overlap significantly with nationality or ethnicity, the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible . . . ."); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984) (using "nationality" and "national origin" interchangeably when noting that "[n]either the general policy nor its particular application to Cuba is any evidence of discrimination on the basis of race or national origin, since it would apply to any person, of any race or nationality, with relatives in the pertinent country.").

However, there is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." E.g., Doe v. Chao, 540 U.S. 614, 630-631 (2004), Accordingly, a judge of this court has distinguished "nationality" from "national origin."  See

15

e.g., English v. Misys International Banking Systems, Inc. Et.al, No. 05-2540, slip op. at 11-12 (D.N.J. 2005). In English, this court concluded that American nationals are a protected class within the context of nationality discrimination under the NJLAD. Id. at 11. As Plaintiffs claim they are all American nationals, they have pled a prima facie case of discrimination based on nationality.

      Wal-Mart contends, however, that Plaintiffs were terminated for a non-discriminatory reason. According to Plaintiffs' pleadings, Wal-Mart and FSI fired Plaintiffs in order to replace them with undocumented aliens who could be paid lower wages. Wal-Mart argues that such conduct, albeit illegal on other grounds, shows that nationality was not the basis for discrimination.

      Plaintiffs contend that even if Wal-Mart has a non-discriminatory reason for firing Plaintiffs, its policy of using only undocumented aliens has the effect of excluding American nationals. As stated in Espinoza, Title VII "prohibits discrimination on the basis of citizenship whenever it has the purpose or effect of discriminating on the basis of national origin." 414 U.S. at 92. While that case applied Title VII and its prohibition of national origin discrimination, the same concept applies to NJLAD claims of nationality discrimination. Thus, under NJLAD, discrimination on the basis of citizenship is prohibited whenever it has the effect of discriminating on the basis of nationality. As such, even if Wal-Mart's alleged policy was financially motivated, it had the effect of discriminating on the basis of nationality and is therefore prohibited. Thus, Wal-Mart's motion to dismiss Count VIII will be denied.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for leave to amend their complaint is

granted.  Wal-Mart's motion to dismiss the complaint has been deemed to be directed to Plaintiffs' Second Amended Complaint.  The motion is granted with respect to Counts V and VII and it is denied with respect to Counts I, II, III, IV, VI and VIII.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 18, 2005