Zatuchni & Associates, LLC
DZ- 2516
2 Research Way
3rd Floor East
Princeton, New Jersey 08540
(609) 243-0300
Attorneys for Plaintiffs

_____

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____  :
                                           :
**EDWARD MATTUS, JEREMY RIVERA,**          :  CIVIL ACTION NO:   2:05-cv-00863
**RICHARD TAVAREZ, ANIBAL**                :                     (DRD) (SDW)
**TAVAREZ, RENE LEON,**                    :
                                           :
     Plaintiffs                         :
                                           :
v.                                         :
                                           :  **SECOND AMENDED**
**FACILITY SOLUTIONS, INC., a New**        :  **COMPLAINT AND JURY**
**Jersey Corporation; WAL-MART STORES,**   :  **DEMAND**
**INC., A Delaware Corporation,**          :
                                           :
                                           :
     Defendants.                        :
_____  :


     Plaintiffs, Edward Mattus, Jeremy Rivera, Richard Tavarez, Anibal Tavarez, and

Rene Leon, by way of this Second Amended Complaint against the Defendants, state as

follows:

### PARTIES

     1.    Plaintiff Edward Mattus is a natural person residing at 12 Swider Drive,

Apartment F1, Parlin, New Jersey.

     2.    Plaintiff Jeremy Rivera is a natural person residing at 6 Swider Drive,

Apartment C-8, Parlin, New Jersey.  Jeremy Rivera is a citizen of the United States of

America.

3.      Plaintiff Richard Tavarez is a natural person residing at 12 Swider Drive, Apartment F-8, Parlin, New Jersey.

4.      Plaintiff Anibal Tavarez is a natural person residing at 495 State Street, Apartment 2nd Floor, Perth Amboy, New Jersey.

5.      Plaintiff Rene Leon is a natural person residing at 1171 Main Street, 1st Floor, Apartment 1-H, Rahway, New Jersey.

6.      Defendant Facility Solutions, Inc. (hereinafter "FSI") is a New Jersey corporation located at 44 Backbone Hill Road, Clarksburg, New Jersey.  Facility Solutions is in the business of providing cleaning services for its clientele.

7.      Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation formed under the laws of the State of Delaware with principal corporate offices in Bentonville, Arkansas.  Wal-Mart owns and operates retail stores in and throughout New Jersey.

**BACKGROUND FACTS**

8.      Defendants Wal-Mart is one of the largest retailers in the United States, operating stores across the country including in New Jersey.

9.      Wal-Mart and Facility Solutions, Inc. have created, engaged in and profited from an unlawful enterprise through the widespread violation of federal immigrations laws, specifically 8 U.S.C. 1324, 8 U.S.C. 1327, 8 U.S.C. 1328  (the "Wal-Mart Enterprise").  Pursuant to the Wal-Mart Enterprise, Wal-Mart hired, employed, and used unlawful immigrant labor to the detriment and harm of American national domestic employees, such as Plaintiffs, who were initially lured to work for Wal-Mart away from other gainful employment by knowingly false promises (during a federal crackdown on

2

Wal-Mart's unlawful practices).  The Plaintiff were then terminated in order to be replaced by cheaper, unlawful alien labor as Wal-Mart continued its unlawful employment practices.  Pursuant to the Wal-Mart Enterprise, Defendant FSI, acting as a contractor of labor to Wal-Mart, profited by providing unlawful alien labor to Wal-Mart to the detriment of Plaintiffs, was used by Wal-Mart to lure Plaintiffs away from other gainful employment during a federal crackdown on the Wal-Mart Enterprise's employment practices, and was used as a cover by Wal-Mart to conceal its employment of unlawful alien labor and other unlawful conduct.

10.    The Wal-Mart Enterprise secured and maintained, by illegal means, the labor of illegal aliens for the mutual profit and benefit of the Defendants to the detriment and harm of domestic American national workers, such as Plaintiffs.  Defendants Wal-Mart and FSI conducted its affairs by employing, harboring, and trafficking in illegal immigrant labor and concealing their conduct, practices, and profits thereby from detection.

11.    The Wal-Mart Enterprise involves a web of contractual relationships between Wal-Mart and its maintenance contractors, who do business through a number of shell corporations, the only one of which Plaintiffs are concerned with herein is FSI. The operation of the Wal-Mart Enterprise is uniform: employment of alien janitors under similar terms and conditions of employment to clean to specifications determined and overseen by Wal-Mart.

12.    As part of its unlawful practice of using cheap, illegal labor in its stores and facilities, the Wal-Mart Enterprise used the services of FSI to provide cleaning services in Wal-Mart's New Jersey locations.  The Defendants engaged in an unlawful

scheme whereby FSI hired unlawful alien labor with either no or illegitimate working papers and assigned these illegal or undocumented aliens to clean Wal-Mart stores at an illegal rate of pay below the minimum wage.  Wal-Mart, at all times, knowingly contracted cleaning services from FSI at an extremely low rate, which FSI was able to offer due to the use of illegal labor.  Wal-Mart employed FSI with full knowledge of the employment of illegal aliens.

13.    FSI and Wal-Mart participated in the Wal-Mart Enterprise through the commission of widespread and systematic violations of the federal immigration laws, including, but not limited to, transporting undocumented aliens, in violation of 8 U.S.C. § 1324a(1)(A)(ii); harboring undocumented aliens, in violation of 8 U.S.C. § 1324a(1)(A)(iii); encouraging undocumented aliens to reside in the United States in violation of 8 U.S.C. § 1324a(1)(A)(iv); conspiring to transport, harbor and encourage illegal aliens to reside in the United States in violation of 8 U.S.C. § 1324a(1)(A)(v)(I); aiding and abetting the transportation, harboring and encouragement of illegal aliens to reside in the United States in violation of 8 U.S.C. § 1324a(1)(A)(v)(II); committing the above offenses for financial gain in violation of 8 U.S.C. § 1324a(1)(B)(i); engaging in a pattern and practice of hiring and employing illegal aliens in violation of 8 U.S.C. § 1324a(3)(A); involuntary servitude in violation of 18 U.S.C. § 1584; and money laundering (within the definition of 18 U.S.C. § 1956(a), et seq.) of the proceeds of the aforesaid criminal acts, as well as mail and wire fraud under 18 U.S.C. § 1341 and 1343.

14.    The Wal-Mart Enterprise operates in and has an effect on intra- and inter-state commerce.

15.    The Wal-Mart Enterprise has been under investigation by federal law

4

enforcement authorities for more than five years.  Upon information and belief, in 1997 and 1998, federal law enforcement authorities raided Wal-Mart stores in St. Louis, Missouri and arrested a number of janitors alleged to be undocumented.  Those raids did not deter Wal-Mart or its contractors from continuing the Wal-Mart Enterprise.  In an action titled United States v. Express Corporate Servs., Inc., et al., No. 3-cv-02-982 (M.D.Pa. June 7, 2002) (the "Forfeiture Action"), federal law enforcement authorities raided Wal-Mart stores in multiple locations on numerous occasions throughout 2001. These raids led to the arrests of approximately 80 individual workers alleged to be undocumented immigrants.

16.     In or about October 2003, federal immigration authorities cracked down again with respect to Wal-Mart's use of illegal aliens as labor and raided approximately 60 Wal-Mart stores across 21 states, including New Jersey.  These raids against Wal-Mart by the federal government resulted in approximately 250 arrests of undocumented aliens who had been employed by the Wal-Mart Enterprise.  These raids are collectively referred to as "Operation Rollback".  Wal-Mart acted as an employer or joint employer of its cleaning and janitorial services personnel within the meaning of FLSA §3(d), 29 U.S.C. §203(d), and 29 C.F.R. §791.2. Wal-Mart exercised meaningful control over the work performed by the cleaning crews and janitors, the hiring and firing of these workers; the amount paid to them as wages; their hours and working conditions; and the tasks they performed, including quality and quantity standards, speed, scheduling and sequence.  Wal-Mart required the cleaning crews and janitors to perform work that is an integral part of Wal-Mart's business.  Further, Wal-Mart controlled the hours and working conditions of the workers and, together with FSI, shared the power to set the

wages, determine their working conditions, and jointly reap the benefits from the workers unlawful labor.  The Wal-Mart Enterprise is an ongoing enterprise with a common pattern of organization that has flourished from 1996 through the present.

17.     As a result of Operation Rollback, Wal-Mart and FSI entered into an unlawful scheme of disguising their continuation of the Wal-Mart Enterprise and their use of illegal alien labor by hiring domestic American nationals for a limited period of time until it was deemed safe to hire cheap, unlawful alien labor again.

18.     Accordingly, as part of the Wal-Mart Enterprise, FSI and Wal-Mart knowingly engaged in a scheme to make false representations and promises to Plaintiffs and other individuals regarding their rates of pay and other terms of employment for the purpose of having the Plaintiffs rely on such false representations in deciding to provide cleaning services to Wal-Mart.  FSI and Wal-Mart, at all times, knew that these representations were false and that the Plaintiffs would each be terminated shortly and replaced with unlawful alien labor.

19.     Plaintiffs relied on Defendants' knowingly false promises and representations regarding wages, working hours, working conditions, and employment security in working for Wal-Mart to their detriment by leaving their places of prior employment in order to work for Wal-Mart.

20.     Plaintiffs were hired by the Wal-Mart Enterprise in October 2003, almost immediately after Operation Rollback occurred and were hired for the specific purpose of concealing its unlawful use and employment of unlawful alien labor that was the subject of the federal government's Operation Rollback investigation.

21.     In or around October of 2003, all Plaintiffs were gainfully employed with

other companies. One Plaintiff, Jeremy Rivera, worked the night shift at Wal-Mart at that time. Each of the Plaintiffs left their prior jobs and took the cleaning crew positions with Defendants based on representations that "team members" would be paid a salary of a minimum of $550.00 per week plus overtime and that these were steady, long-term positions. The Plaintiffs were told that all team members would need to work seven days a week for the first two weeks.

22.     Immediately upon starting work, Plaintiffs were told that that the earlier promises upon which they relied were no longer valid. Plaintiffs were told that they would be paid a lower hourly rate instead of the weekly rate they were promised. Additionally, Plaintiffs were informed for the first time that they would not be paid overtime as promised (even though they would still have to work the longer hours), and that they would only be paid a maximum of seven hours per day.

23.     Furthermore, Plaintiffs were assigned to train newly hired workers who did not know how to speak English, and who constituted unlawful alien labor.

24.     Pursuant to the Wal-Mart Enterprise, on or around November 5, 2003, after several weeks of employment with Wal-Mart, each of the Plaintiffs were summarily terminated and replaced by the unlawful alien labor that they trained.

25.     Apart from the promise that they would be paid $550 per week, the terms under which the Plaintiffs were promised employment and under which they were employed are strikingly similar to those under which the unlawful alien labor was made to work by Wal-Mart pursuant to the Wal-Mart Enterprise. Once they started working at Wal-Mart, the Plaintiffs were required to work seven days per week; were obligated to work far in excess of the FLSA's statutory maximum; were not paid for overtime work as

required by law; and were not given breaks, meal times or other time off.

26.    Wal-Mart acted as an employer or joint employer of the Plaintiffs within the meaning of FLSA §3(d), 29 U.S.C. §203(d), and 29 C.F.R. §791.2. Wal-Mart exercised meaningful control over the work performed by the Plaintiffs, the hiring and firing of these Plaintiffs; the amount paid to them as wages; their hours and working conditions; and the tasks they performed, including quality and quantity standards, speed, scheduling and sequence. Wal-Mart required the Plaintiffs to perform work that is an integral part of Wal-Mart's business. Further, Wal-Mart controlled the hours and working conditions of the workers and, together with FSI, shared the power to set the wages, determine their working conditions, and jointly reap the benefits from the Plaintiffs.

27.    The commission of the predicate acts of racketeering alleged in this Second Amended Complaint was a cause of the harm suffered by the Plaintiffs, specifically, the hiring, harboring, trafficking or transportation of undocumented and unlawful alien labor. Pursuant to the Wal-Mart Enterprise, Defendants sought to conceal their unlawful practices by making knowingly false and fraudulent representation to Plaintiffs in order to lure them to work for Wal-Mart for a limited time knowing that the Plaintiffs would be terminated and replaced by unlawful alien labor as soon as Defendants deemed it prudent to do given Operation Rollback. Further pursuant to the Wal-Mart Enterprise, Defendants were not paid the wages they were promised, were not paid overtime wages in violation of the FLSA, and then ultimately and inevitably were terminated and replaced by the unlawful alien labor that they had previously been training while working for Wal-Mart.

## COUNT I – VIOLATION OF RICO, 18 U.S.C. 1962(c)

28.    Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

29.    At all relevant times, each of the Plaintiffs was a "person" within the meaning of RICO, 18 U.S.C. 1961(3) and 1964(c).

30.    At all relevant times, Wal-Mart and FSI were "persons" within the meaning of RICO, 18 U.S.C.  1961(3) and 1962(c).

31.    At all relevant times, Wal-Mart and FSI formed an association-in-fact for the purpose of profiting from a systematic violation of immigration and labor, wage and hour laws and other laws, referred to as the "Wal-Mart Enterprise".  The Wal-Mart Enterprise was an "Enterprise" within the meaning of RICO, 18 U.S.C. 1961(4).

32.    At all relevant times, the Wal-Mart Enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. 1961(c).

33.    At all relevant times, each of the Defendants associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. 1961(5), in violation of Section 1962(c).

34.    Specifically, at all relevant times, Wal-Mart and FSI engaged in "racketeering activity" within the meaning of RICO, 19 U.S.C. 1961(1) by engaging or aiding and abetting in the acts set forth above which constituted violations of 8 U.S.C. § 1324(a)(1)(A)(ii), (transporting undocumented aliens), 8 U.S.C. § 1324(a)(1)(A)(iii), (harboring undocumented aliens), 8 U.S.C. § 1324(a)(1)(A)(iv), (encouraging

undocumented aliens to reside in the United States), 8 U.S.C. § 1324(a)(1)(A)(v)(I),

(conspiring to transport, harbor and encourage illegal aliens to reside in the Unites

States), 8 U.S.C. § 1324(a)(1)(A)(v)(II), (aiding and abetting the transportation, harboring

and encourage of illegal aliens to reside in the United States), 8 U.S.C. § 1324(a)(3)(A),

(engaging in a pattern and practice of hiring or employing 10 or more illegal aliens within

12 month period), 8 U.S.C. § 1584) (involuntary servitude), 18 U.S.C. §§

1956(a)(1)(A)(i), 1956(a)(I)(B)(i), 1956(a)(1)(B)(ii), 1956(a)(3)(A), 1956(a)(3)(B), and

1956(a)(3)(C) (money laundering of the proceeds of the aforesaid criminal acts), and 18

U.S.C. 1341, 13143 (mail and wire fraud).  Each of the foregoing acts are "predicate

acts" within the meaning of 18 U.S.C. 1961(1).  The Defendants committed themselves,

or aided and abetted in the commission of, at least two or more of these predicate acts of

racketeering activity over the period of time the Wal-Mart Enterprise existed.

    35.    The acts of racketeering activity referred to in the previous paragraph

constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. 1961(5).

The acts alleged were related to each other by virtue of common participants, common

victims, common method of commission, a common purpose, and a common result.  The

Wal-Mart Enterprise engaged in this pattern of predicate acts since 1996 through the

present.

    36.    As part of the Wal-Mart Enterprise, Defendants knowingly and willfully

hired and employed more than 10 undocumented aliens with a 12-month period in

violation of 8 U.S.C. 1324(a)(3)(A).

    37.    As a result of the Wal-Mart Enterprise's violation of 18 U.S.C. 1962(c),

the Plaintiffs have suffered damages, harm, and injury.  As a result of the Wal-Mart

Enterprise, each of the Defendants has profited.

38.     As a result of its misconduct, Wal-Mart and FSI are liable to Plaintiffs for their losses in an amount to be determined at trial.

39.     Pursuant to RICO, 18 U.S.C. 1964(c), the Plaintiffs are entitled to recover treble damages plus costs and attorney's fees from the Defendants.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the plaintiff and against Defendants;

b.     Compensatory damages;

c.     Treble damages

d.     Punitive damages;

e.     Pre-Judgment interest;

f.     Attorneys fees;

g.     Costs of suit;

h.     Any other relief that this Court deems just and equitable.

### COUNT II – RICO CONSPIRACY, 18 U.S.C. 1962(d)

40.     Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

41.     At all relevant times, each of the Plaintiffs was a "person" within the meaning of RICO, 18 U.S.C. 1961(3) and 1964(c).

42.     At all relevant times, Wal-Mart and FSI were "persons" within the meaning of RICO, 18 U.S.C. 1961(3) and 1964(c).

43.     At all relevant times, Wal-Mart and FSI formed an association-in-fact for the purpose of defrauding and injuring the Plaintiffs. This association-in-fact was an

"Enterprise" within the meaning of RICO, 18 U.S.C. 1961(4).

44.     At all relevant times, the Wal-Mart Enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. 1961(c).

45.     At all relevant times, each of the conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. 1961(5), in violation of Section 1962(c).

46.     Specifically, at all relevant times, Wal-Mart and FSI engaged in "racketeering activity" within the meaning of RICO, 19 U.S.C. 1961(1) by engaging or aiding and abetting in the acts set forth above.

47.     At all relevant times, Wal-Mart and FSI were each associated with the enterprise and agreed and conspired to violate 18 U.S.C. 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the aforementioned enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. 1962(d).  In particular, Wal-Mart and FSI agreed to commit two or more of the acts of racketeering specified above.

48.     The conspirators committed and caused to be committed a series of overt acts, in furtherance of the conspiracy and to affect the objects thereof, including but not limited to, the acts set forth above.

49.     As a result of the conspirators' violation of 18 U.S.C. 1962(d), the Plaintiffs have suffered damages in an amount not yet determined.

50.     As a result of its misconduct, Wal-Mart and FSI are liable to Plaintiffs for

their losses in an amount to be determined at trial.

51.    Pursuant to RICO, 18 U.S.C. 1964(c), the Plaintiffs are entitled to recover treble damages plus costs and attorney's fees from the Defendants.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.    Judgment in favor of the plaintiff and against Defendants;

b.    Compensatory damages;

c.    Treble damages

d.    Punitive damages;

e.    Pre-Judgment interest;

f.    Attorneys fees;

g.    Costs of suit;

h.    Any other relief that this Court deems just and equitable.

## COUNT III – VIOLATION OF NJRICO (N.J.S.A. 2C:41-1, *et seq.*)

52.    Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

53.    At all relevant times, each of the Plaintiffs was a "person" within the meaning of NJRICO, N.J.S.A. 2C:41-1(b).

54.    At all relevant times, Wal-Mart and FSI were "persons" within the meaning of NJRICO, N.J.S.A. 2C:41-1(b).

55.    At all relevant times, Wal-Mart and FSI formed an association-in-fact for the purpose of profiting from a systematic violation of immigration and labor, wage and hour laws and other laws, referred to as the "Wal-Mart Enterprise".  The Wal-Mart Enterprise was an "Enterprise" within the meaning of NJRICO, N.J.S.A. 2C:41-1(c).

56.     At all relevant times, each of the conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of NJRICO, <u>N.J.S.A.</u> 2C:41-1(c).

57.     Within the last ten years, the Wal-Mart Enterprise engaged in at least two incidents of racketeering conduct and these incidents of racketeering activity embrace criminal conduct that has the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

58.     The entities involved in the Wal-Mart Enterprise are engaged in activities which affect trade or commerce.

59.     Specifically, at all relevant times, Wal-Mart and FSI engaged in "racketeering activity" within the meaning of NJRICO, <u>N.J.S.A.</u> 2C:41-1, *et seq.*, by engaging or aiding and abetting in the acts set forth above.

60.     The acts of racketeering activity referred to in the previous paragraphs constitute a "pattern of racketeering activity" within the meaning of <u>N.J.S.A.</u> 2C:41-1, *et seq.*  The acts alleged were related to each other by virtue of common participants, common victims, common method of commission, a common purpose, and a common result.  The Wal-Mart Enterprise engaged in this pattern of predicate acts since 1996 through the present.

61.     As a result of the Wal-Mart Enterprise's violation of NJRICO, <u>N.J.S.A.</u> 2c:41-1, *et seq.*, the Plaintiffs have suffered damages in an amount not yet determined.

62.     As a result of its misconduct, Wal-Mart and FSI are liable to Plaintiffs for

their losses in an amount to be determined at trial.

63.     Pursuant to NJRICO, N.J.S.A. 2C:41-4(c), the Plaintiffs are entitled to recover treble damages plus costs and attorney's fees from the Defendants.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the plaintiff and against Defendants;

b.     Compensatory damages;

c.     Treble damages

d.     Punitive damages;

e.     Pre-Judgment interest;

f.     Attorneys fees;

g.     Costs of suit;

h.     Any other relief that this Court deems just and equitable.

### COUNT IV – VIOLATION OF FAIR LABOR STANDARDS ACT

64.     Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

65.     Sections 6 and 7 of the FLSA, 29 U.S.C. 206 and 207, establish the right of all person who are "suffered or permitted to work" to be paid one and one-half times the person's regular rate for all hours worked in excess of forty hours per week.  Section 16(b) of the FLSA, 29 U.S.C. 216(b), entitles such persons to recover all unpaid wages plus interest, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.  At all times relevant to this action, Defendants failed and refused to pay plaintiffs overtime pay for all hours over forty per week worked.

66.     Defendants' failure to provide required compensation for all hours worked

by plaintiffs with the knowledge, consent, and expectation of Defendants' supervisors and other managing agents constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. 255(a).

67.    At all relevant times, the Plaintiffs herein were "employees" as defined under 29 U.S.C. 203(e)(1).

68.    At all relevant times, Wal-Mart and FSI were "employers" within the meaning of 29 U.S.C. 203(d).

69.    As the plaintiffs' employers, Defendants are liable for the Plaintiffs' back pay, liquidated damages, and other relief under the FLSA.

70.    As a result of the Defendants' violations of the FLSA, the Plaintiffs have suffered damages in an amount not yet determined.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.    Judgment in favor of the plaintiff and against Defendants;

b.    Compensatory damages;

c.    Pre-Judgment interest;

d.    Attorneys fees;

e.    Costs of suit;

f.    Any other relief that this Court deems just and equitable.

### COUNT V – PROMISSORY ESTOPPEL

71.    Plaintiffs hereby incorporate and restate the allegations contained in the preceding paragraphs as if set forth at length herein.

72.    Defendants made knowingly false representations to the Plaintiffs with respect to the terms of their employment with the full expectation that that Plaintiffs

would rely on these false representations.

73.    The Plaintiffs did in fact reasonably rely on Defendants' representation by quitting their jobs to become employees of Defendants.

74.    The Plaintiffs relied on Defendants' representation to their detriment, suffering job loss and other substantial economic harm as a result.

75.    Because of Defendants' unlawful conduct, the Plaintiffs have been subjected to mental anguish, embarrassment, humiliation, anxiety, and stress.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.    Judgment in favor of the plaintiff and against Defendants;

b.    Compensatory damages;

c.    Punitive damages;

d.    Interest;

e.    Costs of suit;

f.    Any other relief that this Court deems just and equitable.

## COUNT VI – FRAUD

76.    Plaintiffs hereby incorporate and restate the allegations contained in the preceding paragraphs as if set forth at length herein.

77.    Defendants made knowingly false representations to the Plaintiffs with respect to the terms of their employment with the full expectation that that Plaintiffs Plaintiff would rely on these false representations.

78.    Knowingly false representations were made by a representative, manager or agent of FSI or Wal-Mart, on or about October 15, 2003, to Jeremy Rivera, and consisted of the following particulars:

      a.      That the rate of pay would be no less than $550 per week, plus overtime pay for any hours over forty per week; and

      b.      That the positions were full-time and permanent, with a promise of long-term employment.

79.     Knowingly false representations were made by an FSI or Wal-Mart representative, manager or agent, on or about October 15, 2003, during a general meeting held in a Home Depot parking lot near the Route 9/Oldbridge Wal-Mart location, and consisted of the following particulars:

      a.      That the positions were full-time and permanent;

      b.      That the employees would be paid $550 per week, plus time and a half overtime for any hours over forty per week; and

      c.      That a seven-day work week was mandatory.

80.     Knowingly false representations were made by an FSI or Wal-Mart representative, manager or agent, on or about October 15, 2003, during an individual conversation with Edward Mattus, and consisted of the following particulars:

      a.      Edward Mattus was told that he would be paid $1,000 per week

      b.      This representative also assured Edward Mattus that the positions were long-term

81.     Knowingly false representations were made by an FSI or Wal-Mart representative, manager or agent, on or about October 15, 2003, to Richard Tavarez, and consisted of the following particulars:

      a.      The position would be full-time, long-term and permanent;

      b.      That the employees would be paid $550 per week; and

       c.     That R. Tavarez would be paid $600 per week because he would be assigned as a "Team Leader."

82.     Knowingly false representations were made by an FSI or Wal-Mart representative, manager or agent, on or about October 15, 2004, to Anibal Tavarez, and consisted of the following particulars:

       a.     The salary to be paid to each employee was $550 per forty-hour work week;

       b.     The position was full-time and permanent;

       c.     Overtime would be paid at time and a half for all hours over forty per week.

83.     Knowingly false representations were made by an FSI or Wal-Mart representative, manager or agent, on or about October 15, 2003, to Rene Leon, and consisted of the following particulars:

84.     The Plaintiffs relied on Defendants' representations to their detriment, suffering job loss and other substantial economic harm as a result.

85.     Because of Defendants' unlawful conduct, Plaintiffs have been subjected to mental anguish, embarrassment, humiliation, anxiety, and stress.

WHEREFORE, the Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the plaintiffs;

b.     Compensatory damages;

c.     Punitive damages;

d.     Interest

e.     Costs of suit;

f.     Any other relief that this Court deems just and equitable.

## COUNT VII – TORTIOUS INTERFERENCE
## WITH BUSINESS RELATIONSHIPS
### (Against Wal-Mart)

86.     Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

87.     Wal-Mart had its sub-contractor, Defendant FSI, the nominal employer of Plaintiffs, terminated the employment of Plaintiffs so that Wal-Mart and FSI could replace the Plaintiffs with unlawful alien labor.  Wal-Mart acted to have the Plaintiffs terminated by FSI in furtherance of and pursuant to the Defendants' unlawful scheme of employing unlawful alien labor and concealing its practices.

88.     Wal-Mart at all times acted with malice in that its conduct was a violation of federal immigration law and outside normal, socially accepted standards of conduct.

89.     Plaintiffs were harmed and injured by Wal-Mart's conduct in the loss of their employment, jobs, and livelihood.

90.     Because of Defendants' unlawful conduct, Plaintiffs have been subjected to mental anguish, embarrassment, humiliation, anxiety, and stress.

WHEREFORE, the Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the plaintiffs;

b.     Compensatory damages;

c.     Punitive damages;

d.     Interest;

e.     Costs of suit;

f.     Any other relief that this Court deems just and equitable.

## COUNT VIII – VIOLATION OF NJLAD

91.     Plaintiffs hereby incorporate and restate the factual allegations contained in the preceding paragraphs as if set forth at length herein.

92.     Plaintiffs were, at all times relevant herein, American born nationals

93.     Plaintiffs were very well qualified to serve in the position they held with the Wal-Mart Enterprise.

94.     The Defendants' termination or constructive discharge of the Plaintiffs in favor of hiring and retaining a workforce consisting unlawful alien labor constitutes national origin discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*.

95.     As a result of Defendants' unlawful conduct, Plaintiffs were subject to job detriment and economic loss.

96.     As a further result of Defendants' unlawful conduct, Plaintiffs have also been subjected to mental anguish, embarrassment, stress, anxiety, and humiliation.

WHEREFORE, the Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the plaintiffs;

b.     Compensatory damages;

c.     Punitive damages;

d.     Attorneys fees;

e.     Costs of suit;

f.     Any other relief that this Court deems just and equitable.

Respectfully submitted,

David Zatuchni, Esquire        /s/
Zatuchni & Associates, LLC
2 Research Way
3rd Floor
Princeton, New Jersey 08540
Attorneys for Plaintiff

Dated: November 23, 2005

## DESIGNATION OF TRIAL COUNSEL

David Zatuchni, Esq. is hereby designated as trial counsel in this matter.

David Zatuchni, Esquire        /s/
Zatuchni & Associates, LLC
2 Research Way
3rd Floor
Princeton, New Jersey 08540
Attorneys for Plaintiff

Dated: November 23, 2005

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues and claims.

David Zatuchni, Esquire          /s/
Zatuchni & Associates, LLC
2 Research Way
3rd Floor
Princeton, New Jersey 08540
Attorneys for Plaintiff

Dated: November 23, 2005